By the Court, E. Darwin Smith, J,
Upon the findings of fact of the referee, I think the judgment in this case must be affirmed. The plaintiffs were mortgagees of the canal boat in question, and the money such mortgage was given to secure being unpaid, said mortgage was forfeited, and the plaintiffs had the clear right to take immediate possession of said boat, when she was at Oswego, in June, 1871, and up to the time' they received the bill of sale from Cook for the horses, harness and furniture of said boat, on the 25th day of June, 1871, the day of the date and excution of said bill of sale. The boat had previously been loaded with corn by Nelson and Hosmer, at Oswego, of which firm the defendant was a member, and the mortgagor had started with the same on the route for New York, and had proceeded some distance eastwardly of Syracuse, between which place and Canastota, the bill of sale in question was executed. One of the plaintiffs overtook the boat after it left Oswego, and left it near Canastota, upon the execution of said bill of sale. The bill of sale covered property not embraced in the mortgage, valued by the plaintiffs, as stated in their complaint, at $750. The referee finds that the consideration for this bill of sale was, and the same was given and taken as a further security for, the mortgage debt, and in consideration thereof the plaintiffs agreed with Cook (the mortgagor) that he might retain possession of the boat, horses, lines”and furniture until he had made the trip upon which he was then bound. This finding is fully warranted by the evidence. Cook testifies to it unqualifiedly, and that he gave one of the plaintiffs $5 to pay for the insurance of the boat during the trip. Garrit Audas, one of the plaintiffs, admits the receipt of this money, and testifies “that he could not get the boat insured.” The giving *364 of this bill of sale was clearly a good consideration for the contract by the plaintiffs to let Cook go on with the boat and complete his trip, and the same was a valid contract and precluded the plaintiff from enforcing the mortgage debt against the said boat by depriving the mortgagor of the possession of the same before the requisite time had elapsed to complete his trip and deliver his cargo in ¡New York and return. The proceedings by the plaintiffs, a few days afterwards, to foreclose their mortgage do not, I think, essentially affect or change the rights of the parties in respect to this question, inasmuch as the referee finds as matter of fact that the mortgagor was at no time dispossessed of the said boat or horses, by the plaintiffs, but during all the time she was laid up at Little Falls, the said mortgagor remained on board of her with his crew, and has continued in possession of the boat and horses since that time. The evidence, I think, fully warrants this finding of the referee, and in this view of the facts, the defendant could not be guilty of a conversion of the boat and horses by simply directing the mortgagor to go on and complete his trip, and furnishing him money to defray his expenses for that purpose. The possession of the mortgagor was not unlawful, and he being entitled to go on and complete his trip, it was not unlawful for the defendant to advise and aid him to do so. As the corn with which said boat was loaded belonged to the defendant and his partner, any direction which the defendant may have given to Cook, the mortgagor and master of "the boat, must have respect rather to the cargo than to the boat, horses and furniture which Cook, in his own right, had the lawful authority to control and use for the purpose of completing the said trip.
[Fourth Department, General Term, at Rochester,
September 10, 1872.
Mullin, Talcott and M. D. Smith, Justices.]
The judgment should therefore be affirmed.